We have four cases on the calendar this morning, two patent cases, a Veterans Appeal and an appeal from the Court of Federal Claims. The latter will not be argued as being submitted on the briefs. We will hear our first patent case and then after hearing argument on that in a reconstituted form. So our first case is Telcordia Technologies v. Sisco, 2009-1175. Mr. Dunham. Good morning, Your Honors, and may it please the Court, given the number of issues and the amount of time we have, I'm going to restrict my opening to three issues. I'm going to be talking, unless the panel wants to ask me about other issues, I'm going to be talking about the two issues on which Telcordia conceded infringement and I'm going to be talking about the District Court's exclusion of expert reports. Let me start with the two issues on which we conceded infringement. In other words, the six or so claim construction issues are briefed. We'll deal with them on the briefs. Unless the Court wants to ask me questions about it. Exactly, Your Honor. The first issue on which we conceded infringement was the empty payload field. And the District Court construed that to mean a payload field that is empty of source data but including bit signals of some kind, i.e., garbage bits. And the issue centers around i.e., garbage bits. There would have been no problem if had followed the comment of Judge Bryson in the earlier case in which he treated garbage bits as non-source bits. But he didn't do that. He went on and said, it is any bit that serves no purpose other than placeholding and that is what led to our concession of Judge Bryson's comment. It's inconsistent with the more limited definition given by Judge Farnan on remand from the earlier Belcourt case. And there is absolutely nothing in the specification restricting the definition to serving no purpose other than placeholding. In fact, the specification, the intrinsic record merely states that a bit stream is 6, column 7, lines 27 to 35. Our concession of non-infringement was keyed to that gloss that the District Court put on that word. We made it clear to the District Court that if a different interpretation were involved, we would not be conceding priority. Mr. Dunnell, let me just ask you, there are lots of moving parts in this case, so let me be clear. It seems to me that the other side, however, and the District Court even, rested the decision on invalidity on the inclusion or exclusion of the garbage bits. So am I wrong that even if we were to agree with you on your claim construction problem, at a minimum the District Court would have to have an opportunity below to re-evaluate the invalidity questions with respect to that patent? That's not correct, Your Honor. We have an alternative argument. The validity of the 306 patent was tried by the jury and found in favor of Telcordia. And there are two issues there. One is the garbage bit issue, and one is the available empty payload field. Our argument is, and we developed it in our brief, that in fact, even if the District Court's claim construction were overturned, we would still prevail on the available empty payload field. But wasn't the District Court's, and there's a lot going on in this case, but wasn't the District Court's J-Mal really contingent on the absence of garbage bits in the two references that were relied on for anticipation? Didn't it really come down to that? The District Court's opinion dealt only with the garbage bit issue. It did not deal with the available empty payload field issue. Cisco urges that if the Court reverses the District Court's claim construction, there should be a remand for the District Court to consider it. Our position is that all the facts are here. This Court can deal with it. It is true the District Court didn't reach the extra point. It's also clear that we raised the point in our response to their J-Mal motion. So our position is the Court should reach it. Their position is the Court shouldn't reach it. Now, the text says that the frames with empty payload fields have a bit rate. Where in the frames is the bit rate stored? The, if you look at the drawings and if you look at figure three of the drawings. Which figure? Figure three? Figure three, you will see that, well, figure four actually shows it a little better. It's also in figure seven. But figure four shows that a framer 52 in the top right hand corner is feeding, is feeding bits in forming the frame. Those bits will be, will be, will be bits that permit a bit rate to be formed. They are not source bits. They are just bits. And that is what is described, as I said. But that's in the frame, right? Well, the claim, the claim doesn't, the claim is not restricted to figure four. Their position is that the claims are restricted to figure four. Our position is that the claims are generic to figure four and figure seven. And figure seven operates in a way similar to figure four, but doesn't have a priority scheme as it does in figure four. That's one of the bases for one of the holdings of the District Court. Now, I go on to the having access limitation. And the District Court construed. Even if you win on these claim construction points, Mr. Dunner, don't you still have to show us that there was an abuse of discretion on the part of the trial court in denying you a chance to present expert testimony? There are two answers to that, Your Honor. One is the District Court's holding does not affect every one of the issues on appeal. It affects two of the issues on appeal. As to those two issues, we do have to show an abuse of discretion. And I would like to deal with that. And then I'll come back to the having access point, since you raised the question. We told the District Court that we could not prove in front of the District Court an infringement. And we did not file an expert report because we couldn't prove infringement. We didn't file one on infringement. We filed one on everything else. The CISCO then argued that it wanted to have a summary judgment proceeding and it wanted to be able to deal with all the other claim limitations. And so we told the Court, if CISCO is going to do that, then we need to be able to file an expert report. And the Court said, it's too late. And we said to the Court, it's not too late. There's nine months to trial. And not only are there nine months to trial. But there was an intervening deadline for the scheduling. Yes. And we would forego the original brief. Didn't you kind of take a gamble that the District Court would allow you an interlocutory appeal and you lost the gamble? Your Honor, it wasn't a gamble. We felt we couldn't submit in good conscience, we could not submit in good conscience an expert report satisfying the Rule 11 requirement since we couldn't prove infringement. That was a good faith decision. The Third Circuit and the Third Circuit rules govern here. The Paoli case and other cases make it very clear that exclusion of critical evidence, and this is critical evidence as to two of the issues, is an extreme sanction not normally to be imposed absent of showing a willful deception or flagrant disregard of a court order by the proponent of the evidence. There was no willful deception. There was no flagrant disregard. And not only that, Paoli sets forth a four-factor test. But you only had two weeks until the close of expert discovery and three weeks until summary judgment motions were due. The District Court looks at that, says that's too late. How do we question that here on appeal? Because the Third Circuit has a four-part test. Prejudice, ability to cure the prejudice, bad faith and willfulness. The District Court made no findings on any of those issues. Let's assume there's no prejudice. They'd already won. Let's assume there's no bad faith. Why still isn't it within the Court's discretion that it's just a more efficient way to proceed? Because the Third Circuit makes clear, and the Paoli case was a case in which there was a late filed expert report. It was filed a month late. There were only four months to discovery. And yet the Court held that the willful deception or flagrant disregard. But why was it an abuse of discretion here for the District Court to have concluded this was a flagrant disregard of the scheduling order? Your Honor, because our explanation is a reasonable explanation. It clearly is inconsistent with willfulness. We could not file. But if the standard, one of the criteria that I think you listed from the Third Circuit cases, other than willfulness, is a flagrant disregard of a scheduling order. And so I don't understand, it's not clear to me how we could conclude that it's an abuse of discretion for this District Court to have concluded there was a flagrant abuse of a scheduling order. Your Honor, with due deference, I made the decision. With due deference, I submit that if I have a case and I conclude that I cannot prove infringement under the District Court's claim construction order, I cannot in good conscience file an expert report saying that there is no infringement. I couldn't prove infringement on two separate grounds. I suggest that that's not a flagrant disregard of the Court's scheduling order. That's a reasonable decision to be made. In the Belcourt case, Judge Farnan, the same thing happened. Judge Farnan entered judgment against us. We went up on appeal on only the issues he ruled. Now, I submit that is not a flagrant disregard. It's not even a disregard. It is just a rational, reasonable decision. And I, and given the Third Circuit cases that say the exclusion of critical evidence should be rare, it should be, it's an extreme sanction, and you've got to find four elements. Your question is why wouldn't it have been, why would it have been unreasonable for the Court to have found that? The Court didn't find that, first of all. He didn't find anything. He never, he never evaluated the four factors. He just criticized us in a footnote, which Cisco relies on, for submitting a, an offer of proof. If I hadn't submitted an offer of proof, Mr. Reines would be up here telling you I waived my right to challenge it because I didn't submit an offer of proof. You feel this is a case like in a Kafka novel? Like a Kafka novel? Kafka novel. That's what your brief says. Yes. You're well into your rebuttal time. Do you want to let us hear from Mr. Reines? And we'll give you back five minutes. I will. Thank you, Your Honors. Let me address first the two bases that were addressed by Mr. Dunner. He's conceded that for two of the other bases to support the Court's 306 non-infringement ruling, that that rises or falls with the abuse of discretion that Telcordia has to show for Judge Sleet's ruling. First, on the so-called garbage bits issue, the Well, he needs to win on all of his claim construction issues, doesn't he? Yes, he does, Your Honor. On garbage bits, to me, that one's one of the easiest. It's kind of a messy case, obviously, but that one's one of the easiest. The issue is the payload field has to be empty. Judge Clevenger, when The garbage comes from Judge Bryson, and he defines it in the next sentence that he means absent source data. I don't think that was definitional. So the flow was, Judge Clevenger said, empty means empty, so there's nothing there. That was the first thing. So what are you talking about? And then it was explained that you obviously need placeholders to come through the system. And that's when you talk about bit rate. Rate is time, right? A bit rate is time. So all it is is placeholders coming through. I'm really kind of disturbed by this getting claim construction off of ad lib comments from the bench at this court, though. And particularly when Judge Bryson defines his empty as absence of source data in the same breath, almost. I don't think it's definitional. So the point is Well, but see, the whole point is you don't think it's definitional. Mr. Dunner does. And why are we getting claim construction off what this court says from the bench? Whether it's even with somebody as bright as Judge Bryson, he's not trying to give you claim construction from the bench. Okay, then let's get it from the claim. The claim says it's empty. Bryson, the reference to garbage bits is clear to me. It means placeholder. In other words, it's not Empty is not garbage bits. It means only placeholders that have no information. You're the one who put the garbage bits in. Well, we argued for it. And Judge Sleet accepted it because it's placeholders, meaning no information. Zero data, no payload data, no source data, yes. But where does the garbage come from? Because it's just placeholders. In fact, in the yellow brief at 22, they made clear there's no system to replace information in the empty payload field and replace it with new information. This just is so blatantly adding a limitation and a limitation that comes from a Federal Circuit ad lib comment. I'm just having trouble with that. Well, Your Honor, I'll move on. But empty to me, I think it's plain meaning of the claim. If you want to go textual, it says it's empty. That means information doesn't bear any content. Well, empty means zero data, as the rest of the explanation says. Zero data means no payload data. Right. But that's different from garbage. That means they're placeholders. That's different from garbage bits. Understood. And that's the whole point. I think the point is that they're just placeholders. On to the tributaries, which is the other one, the point that there's multiple sources that have access to the bit stream. Mr. Reiners, I'd like to ask you about your cross appeal. Sure. Your argument that 763 is invalid because monitoring means it has no structure. Correct. Not the controller's structure? The controller's a black box. But I don't, first of all, so it's not, it's certainly not structure for monitoring. Because if you look at the specification, what you require is clear linking. The specification is clear that what the controller does is insert error signals. It's the inserting means, which is a different claim element. What the patent describes, and this is at A209, it's comp three at line four through 13, that the node is what does the monitoring. But the key is it does identify something as structure, the controller 118. And if one of skill in the art understands that structure, you lose. And there's also evidence in the testimony of the experts that, yeah, they understand a controller and understand its structure. Okay. I think we're talking past each other, and I apologize for that. Okay. We'll help respond to the line that it does identify controller and controller is understood by a person of skill in the art. Okay. Even if one accepts that that's all true, the specification doesn't clearly link the function to that structure. In fact, it links that, it links a different function to that structure, and then it links a different box to that function. This is at comp three at line four through 13. It refers to the node performs the monitoring, and the node is everything. They don't even argue that that's structure. The node is one. The node has about 30 different numerals within it. Well, is the node structure? The node is definitely not structure, and no I don't want to introduce yet another question here about including something else, but in column one, it seems to me the structure that's linked to the function is the selector. On column one, line 54, 55, 56, it talks about in each node includes a selector, which monitors the communication. Did anyone ever suggest or argue that it was the selector that was the relevant structure here? Talcordia never attempted to argue that. Never attempted to argue that. But what we know is the monitoring means isn't performing this function. It performs the function of inserting errors. The clear linking, you can look at the default proof case, you can look at B Braun, that has to be clearly in the specification, which goes to another element of our cross appeal, which is that this decision should have been made by the judge, and even if you accept there's underlying facts, and I know many will view there as being underlying facts in indefiniteness, although that's inconsistent with the Exxon case, which was first in time and under Newell would control, squarely rejected the idea that there would be underlying facts. But let's accept that there are for now. Even if you accept that, it can't be that under Markman, it's for the judge to decide claim meaning, such as what's clearly linking function and structure. But all of a sudden, it's a jury question when you come to the far more sensitive issue of invalidity. There are so many policy reasons and cases. But didn't you fail to prove that one of skill in the art would not understand the controller structure? Dr. Prune Snall is identifying that as structure and saying one of skill in the art knows what it is. And you don't ever knock that down. Back to the merits. What I knocked down is that there's no clear linking. And I think that that's become clear. The node is what's linked. It says the node continuously monitors. This is at column 3 at line 4. When it talks about the monitoring means, it talks about inserting errors when it's talking about the controller. It's just the linking's not there. And whether it's the selector or something else, it's not the monitoring means it's performing this function. That clear linkage is missing. How about damages? On damages, Your Honor, the issue there, I think, shouldn't be overly complicated. Telcordia sought additional relief beyond the verdict. It's their burden to seek additional relief. Whenever you seek relief, it's your burden. They could not demonstrate that they weren't already compensated. Well, but I'm looking at the jury form on page A46. Right. It just says, please identify the amount of monetary damages. That's correct. Why isn't the district court, who is in touch with that best, able to identify what the jury meant, which was past monetary damages for infringement that's complete and an ongoing royalty is necessary? That wasn't the theory that was presented to him. The theory that was presented to the jury by Cisco was a lump sum. The district judge sitting there, hearing all the testimonies, thought it was. No, no, that's not. Thought it was at least clear and unclear and that the jury didn't make it clear, and so he did. No, he didn't. Why would we second guess him? He didn't make it clear. He said he couldn't tell. Period. So is it your argument that that's what's missing here? It's a burden issue, Your Honor. Yeah, so when the court says jump ball, he says there are three issues. I don't know what they did. Is it your view that then the burden remains on them? It shifts to them? It doesn't shift. They're seeking the relief. But what if the district court had concluded, as Judge Rader, what if we could infer from the district court and he indeed did conclude that the relief was inadequate? Then I'd brief that appeal. If he had decided that, I think we would maintain just the clear error element of our appeal. The court ordered the parties to negotiate a reasonable royalty rate going forward. What happened? There was a motion for stay that's pending, and that hasn't gone forward, Your Honor. Is the case not final, or is it final except for an accounting? My analysis of that is that we have the legal issues are all resolved, the equitable relief has been ordered, and that the identification of an amount in pursuant to the reunion of the PACE panel here, the negotiation of the amount is part of the ongoing equitable jurisdiction of the court in terms of implementing its equity jurisdiction. But the one thing I do want to add is that the Supreme Court quite recently made the where, because equitable relief is so difficult to apply, it's so hard to sort of do these negotiations and sort of have the court in the business of monitoring a going forward license, that you better be sure that the legal remedy of money wasn't adequate in the first place. So before we plunge into this equitable exercise, it seems to me the burden needs to be carried that they weren't adequately compensated already, and they failed to carry that burden. By the way, the court hasn't even ruled on your motion to stay the accounting, right? That's fair, Your Honor. That's correct. That's kind of back to our presiding judge point. Is this final? I gave the best answer I have, which is I think that what remains on the equitable relief is the ongoing equity jurisdiction of the court to regulate the equitable order that he did give in the form of the ongoing royalty, and that every other issue is resolved. If we were to agree with you on the 763 validity argument, does this issue of royalties go away? I mean, what happens to the jury vote? It needs to get reformulated on appeal. I think there would be a reduction in the damage award, obviously. Your view is that the jury's award was a paid-up license, for a paid-up license? Yes. It's almost exactly the amount that we asked the jury to award for a paid-up license, and $65 million different from what they saw in their past damages. I think I should reserve my time. We will do that. Thank you. Mr. Donohue, you've got five minutes to rebut. Thank you, Your Honor. Let me deal with the indefiniteness point in the 763 patent. I want to deal with Judge Proh's question about the selector. You're talking about Column 1. Yes. Nobody argued that because that is a different kind of monitoring, Your Honor. The monitoring is of a multiplex signal. This is monitoring of a demultiplex signal, the selector. So the reason they didn't raise it is they must have understood that. The reason we didn't raise it is we understood that. That's the answer to your question. Secondly, there clearly is linking. The linking is that the patent defines the node as comprising controllers and selectors in Column 2, lines 30 to 31. So the node is made up of the controllers and the selectors, and moreover, if you look at the key phrase in Column 3 that everybody is focusing on, each node continuously mutters and evaluates the integrity of the multiplexed sub-rate signals, and that goes to the point I just made, Your Honor, about the selector, multiplexed sub-rate signals arriving at the node. If you look at the drawings, you see the signal arriving at the node, but it arrives at the controller. Which one? Figure 2 and Figure 1. Figure 2. Figure 2.  They are arriving at the nodes. That is proof positive that it is the controller portion of the node that does the monitoring. Secondly, the question was raised, well, the monitor, the controller, also inserts an error signal. It does. The controller does multiple things, and the case law is legion of this Court that says that if a device, a structure, does multiple things, that doesn't disqualify it from being a corresponding structure. So I submit, Your Honors, that we clearly satisfy the indefiniteness requirement, and we cite the technology licensing case in our brief, which involved a circuit, which involved a black box, and the Court held that the fact that the circuitry was not disclosed was not a deficiency, and the evidence here clearly shows that one skilled in the art would know exactly. What about damages? The damages issue, Your Honor, I submit. But I have not a paid-up license. Paid-up license. There is no way, no rational way, you can conclude that the jury verdict is a paid-up license. It doesn't match any theory advanced by any party, certainly not Telcordia's expert, Musica, or the expert, Cisco's expert, or Telcordia's expert. Cisco's expert advanced a lump sum payment at about $5 million. The jury rendered a $6.5 million verdict. It doesn't match anything. It obviously is a composite of different pieces of evidence, the royalty base, the royalty rate, whether it was post or pre. They try to fill up the deficiency by arguing that the jury must have awarded interest instead of deducting for present value for future royalties. The court declined to adopt a request for a compulsory license. Pardon? The court declined to adopt your request for a compulsory license, implying that it's a paid-up license. No, Your Honor. What the court did, the court's action is inconsistent with finding it was a paid-up license. The court expressly found it wasn't a paid-up license, and ordered the parties to negotiate for future royalties. That's totally inconsistent with any viewpoint that the court concluded it was a paid-up license. Now, Cisco says, well, we should have showed there's no adequate remedy of law. What adequate remedy of law are they talking about? What they're basically saying is if we can't positively prove that the district court didn't find a paid-up license, therefore we haven't satisfied our burden, that makes no sense. Well, what if in this case the jury had returned a verdict of $5 million? Would you concede in that instance that if the court had still awarded a license that it would be problematic because one could fairly assume that the jury had given Cisco its request? If the jury had awarded an award of $5 million, it might well be a different argument. But the jury didn't give that award. The jury gave an award of $6.5 million. The jury has nothing to say about interest, which is their theory of bridging the gap, and in fact neither expert even mentioned interest. So it's inconceivable that the jury went through that thought process. I submit that if there's a weak link, I think they're all weak links, but the weakest of all the weak links is this damage issue advanced by Cisco. I would like to mention one point about the exclusion of expert reports. Very briefly. Okay, very briefly. Though I submit it was an abuse of discretion, we also submitted extrinsic evidence, non-expert reports, extrinsic evidence, which the district court totally ignored and which I submit establishes genuine issues of material fact, wholly aside from what the court does on expert reports. Thank you, Mr. Dunner. Thank you, Your Honor. Mr. Reines has rebuttal time on cross-appealed issues. Thank you, Your Honor. On the 763 patent, we've heard a new theory for the first time, that the clear linking that's obviously required by this court's case law is indirectly traveling through the node. And for one, insofar as this is a review of a jury verdict, that argument wasn't presented to the jury, so it's not preserved. Insofar as this is being treated as a legal issue for the court, that argument doesn't work even if it were to be indulged at this late point in the process. Basically, that's a concession that there's no clear linking of the monitoring means. There's nothing else to take that as. Insofar as he's saying, well, indirectly it goes through the node, if you just look, Your Honors, at Figure 2 and look at what the node looks like, the node is Item 1. There's about 20 different components in that node. The node's the whole thing. And the default proof case, which involved this point-of-purchase machine, is indistinguishable, which says, you can't just point to some big, huge, multi-component thing and then say that's clear linking to one specific piece. There's just not clear linking here, Your Honor, based on that. I'm happy to answer any questions about it, but this node theory of the 11th hour doesn't work either and wasn't presented to the jury. On the damages front, the Franklin case, the Supreme Court quite recently, made this point that I want to emphasize, which is before you get into the difficult process of equity jurisdiction in terms of managing the ongoing conduct of commercial parties, and that was documented well by everybody in PACE, it requires a burden to show that you need to get into that enterprise. And the issue is who bears the burden that the verdict's not more specific? That's essentially the question. And there's a lot of reasons not to get more specific in the verdict form. There was four parties in this litigation at different times. There's so many different issues. You could make that verdict form 50 pages long if you parsed out everything, which has to be appreciated at the appellate level. But the point is that's not a decision made at that point that everyone knows how it's going to work out. The fact is we have just the number, and the question now is they're seeking additional relief, and the question is do they have to show that the legal remedy they've received is inadequate? And the answer is yes, especially where it puts us off into this difficult and troubled sea of how you exactly get into managing the equity jurisdiction on the ongoing royalty. On the exclusion of the expert, I just want to say one thing, which is. . . That is not cross-appeal. Okay. Thank you. Thank you, Mr. Reines.